# CHARLESTON.

STATE v. M. R. ANKROM.

STATE v. SAM HISSAM.

STATE v. G. C. FLETCHER.

STATE .V. B. F. PIPES.

Submitted September 1, 1920.     Decided September 7, 1920.

1.  CARRIERS—*Procuring and Using a Pass Held an Offense.*

    Section 6, chapter 15-0, Code 1918, prohibiting a public service corporation subject to the provisions of that chapter from charging, collecting or receiving a greater or less compensation for a service rendered than it. charges, collects or receives for a like and contemporaneous service under the same or similar circumstances and conditions, and section 17, declaring it a misdemeanor to violate, or to procure, aid and abet any violation of, this or other provisions of the chapter, when read together, render illegal, except as permitted by section 20, the procurement and use of a pass entitling the holder to free transportation or service from such public service corporation, and subject such person, if found guilty, to the penalties therein prescribed.  (p. 572).

2.  SAME—*Indictment .Charging Offense of the Use of a Pass Held Sufficient.*

    An indictment charging such an offense with reasonable certainty and precision is sufficient upon demurrer.  (p. 572).

    (WILLIAMS, PRESIDENT, absent.)

Certified from Circuit Court, Tyler County.

Separate indictments against M. R. Ankrom, Sam Hissam, G. C. Fletcher and B. F. Pipes for violation of the law against free passes.  Demurrer to each indictment overruled, and action certified for review.

                              *Affirmed.*

*E. T. England,* Attorney General, and *Charles Ritchie,* Assistant Attorney General, for plaintiff.

*J. H. Strickling, T. P. Hill,* and *Boreman & Carter,* for defendants.

LYNCH, JUDGE:

The indictments charge against each defendant singly a violation of section 17, ch. 15-0, Code 1918, read with section 6 of the same chapter, a demurrer to which the circuit court overruled and certified its action here for review. Section 6 forbids discrimination in rates charged and received by public service corporations subject to the provision of the chapter for the transportation of persons or property and other service of a public character, and requires such corporations to charge, demand and receive, without discrimination, the same rate for doing a like and contemporaneous service for any and all persons under the same or substantially similar circumstances and conditions; and section 17 declares "every officer, agent, employee or stockholder of any such public service corporation, and every patron, passenger, shipper or consignee, or other person, who shall violate any provision of this act, or who procures, aids or abets any violation of any such provision by any such public service corporation" to be guilty of a misdemeanor and upon conviction thereof punishable as prescribed by that section.

The indictments sufficiently disclose the public service character and function of Tyler Traction Company, the owner or operator of an electric railroad extending from Sistersville to Middlebourne, wholly within Tyler County, and organized and equipped for and engaged in the transportation of passengers for hire from one station to another along the line of its railroad and between the two above mentioned terminal stations. The specific charge preferred in each indictment is that each of the defendants, within one year prior to the finding of the indictment, was, together with other unnamed persons, a passenger in one of the cars of Tyler Traction Company from one station to another along the line of its railroad, "and then and there being such passenger, did unlawfully and wilfully procure, aid and abet the said Tyler Traction Company in transporting him * * * as a passenger in and by a certain electric

railway car over, upon and along the said line of railroad by the said Tyler Traction Company, without the said Tyler Traction Company charging, demanding, collecting and receiving any compensation whatsoever for so transporting him as such passenger by reason of a certain device for free transportation, commonly called a 'pass', unlawfully issued and presented by the said Tyler Traction Company to him and then and there held by him, * * * and the said Tyler Traction Company was then and there charging, demanding, collecting and receiving, and did then and there charge, demand, collect and receive from other passengers each the sum of —— cents, the exact amount whereof is unknown to the jurors, as compensation for a like and contemporaneous service rendered by said Tyler Traction Company to and for said other passengers under substantially similar circumstances and conditions, against the peace and dignity of the State."

These indictments, it is argued, are insufficient because (1) there is no direct or positive charge of the commission of an offense by Tyler Traction Company, and (2) none that it carried defendants or any other persons as passengers, or (3) that it had or charged and collected a definitely prescribed and fixed rate for the carriage of any particular class of passengers, and (4) none of any act done by any of the defendants in aiding and abetting the traction company in the violation of the provisions of the statute, and (5) the indictments do not show the distance or between what stations Tyler Traction Company transported defendants or other persons as such passengers.

The first objection, judged by the argument adduced to support it, is based upon the erroneous theory of the existence of the relation of principal and accessory between the traction company and each of the defendants growing out of the use of the words "aid and abet" found in the statute and in the indictments. There is and can be no such relation under any reasonable construction or interpretation of the two sections or of the chapter, read and considered in its entirety, so far as its provisions are relevant to the matters involved in the indictments. Even if the doctrine contended for by defendants has any bearing or effect in proceedings under an indictment for a misdemeanor, such as a violation of the sections is declared

to be, the language used by the Legislature in constituting the offense clearly makes all violators of the law equally guilty and equally punishable for its infraction. There can, therefore, be no such relation as principal and accessory in cases of this sort. *United States* v. *Gooding,* 12 Wheat. 460.

The averments of the indictment already quoted sufficiently answer the second, third and fifth propositions urged by defendants. These averments are emphatic and understandable in one way only, and being so disclose the actual relationship of carrier and passenger between the railroad on the one hand and the persons so carried to their destinations on the other, including defendants, who paid nothing of value for the service rendered to them, and those who did pay the regular rate charged, demanded and received by the railway company for such service; and that the service so rendered to defendants and others was a like and contemporaneous service under similar circumstances and conditions. If in the opinion of the trial court the language used in the indictments is not sufficiently specific and informatory to enable an ordinarily intelligent person to comprehend its meaning and purport, defendants may ask and the court require a more explicit statement of the facts necessary to render the charge intelligible. *State* v. *Railroad Co.,* 68 W. Va. 193; *State* v. *Lewis,* 69 W. Va. 472; *State* v. *Sixo,* 77 W. Va. 243; *State* v. *Hurley,* 78 W. Va. 638.

There are two offenses of which a passenger may be guilty under section 17: One for procuring transportation without the payment of the rate prescribed by the carrier for that service; the other by aiding or abetting the procurement of the service. The first offense is direct and personal and ordinarily results from the active personal participation of the passenger, whose activity accomplishes the end desired by the attainment of free transportation for himself contrary to the express requirement of the statute. In other words, he procures through his own agency a privilege which he knows the carrier is forbidden to confer upon himself and others to whom it renders the same or like service under similar circumstances and conditions without demanding and receiving therefor a fixed and definitely prescribed rate of compensation. It seems plain from the averments of the indictments that defendants resorted to

this direct method and thereby obtained from the railroad company free service, while for a like service rendered by the company to other passengers, at the same time or under similar conditions, the latter were required to pay and did pay the usual compensation in money. If so, defendants did what the statute condemns and seeks to prohibit by declaring the violation of the express inhibition to be a misdemeanor punishable by fine or imprisonment. What defendants did, according to the plain meaning of the indictments, resulted in the procurement of their personal transportation in disregard of the apparent purpose and intent of the statutory denunciation of theretofore prevalent discriminatory conduct of certain public service corporations falling within the purview of the Public Service Commission Act, chapter 15-0 of the 1918 Code. *Shrader* v. *Steubenville, etc. Traction Co.,* 84 W. Va. 1, 99 S. E. 207; *City of Charleston* v. *Public Service Commission,* 86 W. Va. 536, 103 S. E. 673. Through the presentation of the pass in lieu of money, without the payment of which other passengers would not have been carried to their destination, defendants thereby not only obtained free transportation in violation of the law, but also to that extent encouraged the railroad's agents and employees to commit the same offense, unless they had just cause to believe and did believe defendants were within the terms of the exceptions contained in section 20 of the chapter, namely, the carrier's officers, agents, attorneys, etc.

If the defendants, conscious of the illegality of their acts. did, as charged, wilfully and unlawfully procure free transportation by the carrier, they are guilty as charged. Though the word "aid" does not necessarily embrace or imply guilty knowledge or wrongful purpose, yet when supplemented by "abet", as both are used in the statute and indictments, they jointly indicate such knowledge and purpose and the intention to encourage the commission of the offense. Such are the usual definitions of these terms in felony indictments where there are accessories either before or after the fact. As already noted, the indictments present two phases, the personal procurement of carriage by the railroad company and the encouragement of the agents of the latter to join in the violation of the law. If the proof sustains either charge, other averments thereby be-

come immaterial and may be treated as surplusage upon the trial of the cases.

Deeming the indictments sufficient, we direct the certification of our decision to the circuit court for its guidance.

*Affirmed.*