513 P.2d 966

**Arthur L. HERZBERG,
Appellant,**

v.

**STATE of Arizona ex rel. Millard
HUMPHREY, Director of
Insurance, Appellee.**

**No. I CA–CIV 1759.**

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 11, 1973.

Berry & Herrick by Richard S. Berry, Tempe, for appellant.

Gary K. Nelson, Atty. Gen. by Nicholas C. Guttilla, Asst. Atty. Gen., Phoenix, for appellee.

## OPINION

HAIRE, Judge.

Appellant Herzberg has appealed from a judgment entered by the Maricopa County Superior Court which affirmed an order previously entered by the appellee Director of Insurance denying Herzberg's application for an insurance agent's license.

Herzberg had previously been licensed as an insurance agent, but his licenses had expired and had not been renewed or reissued. When he applied for new licenses, a hearing was held and the Director thereafter entered an order refusing to issue the licenses to Herzberg upon the statutory grounds that he had "A record of dishonesty . . . in business and financial matters." *See* A.R.S. §§ 20–289, subsec. B, par. 2 and 20–290, subsec. B, par. 2.

Several questions are raised on this appeal dealing primarily with (1) the nature of the acts relied upon by the Director as evidencing "a record of dishonesty in business and financial matters" and, (2) with the scope of the review proceedings in the Superior Court. Additional facts will be set forth as pertinent to the discussion of the questions raised.[1]

The Director relied upon several violations by Herzberg of the securities laws as forming a basis for his finding that Herzberg had a record of dishonesty in business and financial matters. Evidence concerning these alleged violations was presented at the hearing before the Director of Insurance, and clearly supported the finding that the violations occurred. However, Herzberg contends that the administration of the state securities laws is entrusted solely to the Director of Securities under the Arizona Corporation Commission and that the appellee Director of Insurance may not invoke these alleged violations in order to deny him a license to sell insurance.

Most of the provisions of A.R.S. §§ 20–289 and 20–290, dealing with grounds for the refusal to issue an insurance agent's license, would be of little meaning if the Director of Insurance were precluded from examining into matters which are within the jurisdiction of other state agencies, *e. g.,* real estate transactions, banking transactions, securities transactions, liquor transactions, etc. The statutory provisions certainly do not evidence an intent that the Director be limited in his investigation of an applicant's background to matters involving possible violation of the state insurance laws. We are not here presented with a situation where the Director of Insurance has, acting upon a complaint, attempted to invade another agency's jurisdiction and attempted to enforce the Arizona Securities Act. There is no showing of conflicting actions by two different state agencies. The Director has not attempted to invoke criminal penalties imposed upon willful violators of A.R.S. §§ 44–1841 or 44–1842. He has not attempted to enjoin Herzberg from committing any acts relating to securities transactions, nor has he attempted to prescribe or proscribe any action regarding Herzberg's securities transactions. He has merely examined a number of business activities of Herzberg in order to determine Herzberg's record in

---

1. Appellant has devoted 33 pages of his opening brief to a statement of facts. The statement is neither "concise" as required by Rule 5(b) 4, Rules of the Supreme Court, 17 A.R.S., nor does it contain a single reference to the abstract of record or the transcript of the evidence although it differs materially from the facts as found by the Director and by the trial court.

business and financial matters. The Director has found that Herzberg engaged in a number of securities transactions, some of which the Director concluded, acting upon both the testimony of representatives of the securities division of the Arizona Corporation Commission who testified at the administrative hearing and the opinion of the attorney general, violated the Securities Act of Arizona.

■ The cases cited by Herzberg dealing with conflicting agency jurisdiction questions are inapposite, and we find that the Director did not exceed his jurisdiction in considering Herzberg's conduct in securities transactions as bearing upon the question of his record for honesty or dishonesty in business and financial matters.

A subsidiary question raised by Herzberg is stated as follows:

> "Where there is no evidence of wrongful intent, may a violation of the securities laws of the State of Arizona be used to deny a license to sell insurance upon the ground that the applicant has a record of dishonesty in business and public affairs?"

The problem with the question as stated by the appellant is that it assumes that the evidence was insufficient to permit an inference of "wrongful intent". While mere technical violations of the state securities laws under certain circumstances might not be sufficient to support a finding that the violator had "a record of dishonesty in business and financial affairs", still, considering all the circumstances involved here, the evidence was sufficient to support the trial court's finding on this issue. Herzberg himself was licensed as a securities salesman by the securities division of the Arizona Corporation Commission, and as such the trial court could reasonably infer that he had a higher degree of knowledge of the securities laws than the average man. Without going into the details of the evidence (adequately summarized in the appellee's brief with transcript references), we find sufficient basis in the record for the trial court's conclusion that Herzberg's conduct evidenced a record of dishonesty in business and financial affairs.

■ Herzberg next contends that the trial court should not have allowed evidence of certain specific acts of securities violations because these acts were not among those considered by the Director in arriving at his conclusion that appellant had a record of dishonesty in business and financial affairs. Appellant argues that an appeal by its very nature indicates a review of what took place below, that it does not allow new exploration of alleged new grounds. He further contends that if the breadth of a trial *de novo* is allowed to encompass any new grounds that either party may wish to urge, the reviewing court ceases to sit in an appellate capacity, and usurps the original jurisdiction of the Department of Insurance in the first instance. These contentions are certainly true as applied to regular appeals, such as appeals to this Court, where review is limited to the record established in the trial court. Patton v. Paradise Hills Shopping Center, Inc., 4 Ariz.App. 11, 417 P.2d 382 (1966); Milam v. Milam, 101 Ariz. 323, 419 P.2d 502 (1966); City of Yuma v. Evans, 85 Ariz. 229, 336 P.2d 135 (1959). However, an entirely different type of "appeal" to the Superior Court is provided by A.R.S. § 20–166 for review of the decisions of the Director of Insurance. Inasmuch as § 20–166 provides for judicial review and establishes a definite procedure for such review, the provisions of the Administrative Review Act are not applicable. *See* A.R.S. §§ 12–901 et seq. The provisions of A.R.S. § 20–166, pertinent to the questions raised on this appeal, are subsections C and D as follows:

> "C. The court shall hear the matter de novo, including any intermediate order or matter involving the merits and necessarily affecting the order appealed from, advancing the cause upon its calendar as are other causes to which the state is a party.

"D. After hearing the appeal the court may affirm, modify or reverse the order or action of the director in whole or in part, or remand the action to the director for further proceedings in accordance with the direction of the court."

It will be noted that subsection C provides for a "*de novo*" hearing in the Superior Court. The nature and scope of "*de novo*" proceedings in a reviewing court has been the subject of considerable attention in the appellate decisions of this state and other jurisdictions, particularly insofar as concerns the judicial review of administrative agency orders. From the decisions, it is apparent that both the nature and scope of a *de novo* review is dependent upon the presence or absence of other statutorily imposed restrictions. Some reviews, denominated as *de novo,* actually do in a sense constitute a classic review, in that the administrative agency's order can only be set aside if the evidence admitted in the reviewing court shows that the agency's decision was arbitrary, unreasonable or unlawful. *See* Arizona Corporation Commission v. Fred Harvey Transportation Co., 95 Ariz. 185, 388 P.2d 236 (1964); Sulger v. Arizona Corporation Commission, 5 Ariz.App. 69, 423 P.2d 145 (1967), construing A.R.S. § 40–254. On the other hand, when we consider a *de novo* review without statutory limitations of any kind, that is, a classic *de novo* reconsideration, the proceeding loses most of its character as a review, and is heard the same as though it were an original proceeding upon evidence introduced in the reviewing court, and with the reviewing court making an entirely independent determination unfettered by presumptions created by the decision of the administrative agency. *See* Duncan v. Mack, 59 Ariz. 36, 122 P.2d 215 (1942), involving a liquor license review under a prior statute calling for *de novo* proceedings; State v. Jones, 94 Ariz. 334, 385 P. 2d 213 (1963) review of a mining lease decision under statutory *de novo* provision; Davis v. Brittain, 89 Ariz. 89, 358 P.2d 322 (1960) review under statutory *de novo* provision of Board of Supervisors' decision refusing to form a power district. *See also* 2 Am.Jur.2d, Administrative Law, § 698 p. 597.

■ Here the statutory provision for review of the Director's decision provides for a *de novo* hearing in the Superior Court, without any statutory restrictions whatsoever. This type of review is identical to that discussed in the Duncan, Jones and Brittain decisions, *supra.* The issue as formulated by the proceedings before the Director was whether Herzberg had "a record of dishonesty in business or financial affairs." In our opinion, in determining that issue, the trial court was not limited to evidentiary facts, or solely to the proof of the specific facts relied upon by the Director in the administrative proceedings, but rather, could consider any evidence which might have relevance to that ultimate issue.[2]

■ One final contention urged by appellant is that the above interpretation exposes him to surprise and does not give him a reasonable opportunity to prepare for the *de novo* hearing in the Superior Court, thereby denying him procedural due process. This contention cannot be sustained. It was appellant who precipitated an immediate hearing in this matter by his order to show cause, without availing himself of discovery devices under the Rules of Civil Procedure. Further, at the Superior Court hearing the trial judge expressly indicated his willingness to grant a continuance to appellant so that he could adequately prepare for the evidence which the

---

2. Although not cited by either party, the Court is aware of the decision of the Arizona Supreme Court in Arizona Board of Regents v. Superior Court, 106 Ariz. 430, 477 P.2d 520 (1970) where, in a very abbreviated per curiam opinion, the court stated: "On review from an administrative determination the Superior Court can only decide whether the administrative action was illegal in that it was arbitrary, capricious or involved an abuse of discretion." We do not understand that the court intended the quoted statement to apply to statutory *de novo* reviews.

state wished to introduce. The appellant refused this offer, electing to proceed. Under these circumstances, the appellant cannot now complain that he has been denied procedural due process. Davis v. Arizona State Dental Board, 57 Ariz. 255, 112 P.2d 877 (1941).

The judgment of the trial court is affirmed.

JACOBSON, C. J., and EUBANK, P. J., concur.